1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   Alan Troy Nimer,              )     No. CV-12-1103-PHX-ROS (LOA)
                                  )
10            Petitioner,          )     **REPORT AND RECOMMENDATION**
                                  )
11  vs.                           )
                                  )
12                                )
    Charles L. Ryan, et al.,       )
13                                )
              Respondents.         )
14                                )
    _____  )
15
16        This matter is before the Court on Petitioner's *pro se* Petition for Writ of Habeas

17  Corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in which Petitioner challenges his

18  criminal conviction imposed following a jury trial in the Maricopa County Superior Court,

    State of Arizona, Case No. CR 2005-104861-001 DT. (Doc. 1) Respondents filed an Answer
19
    to Petition for Writ of Habeas Corpus (the "Answer"), but Petitioner did not file a reply.
20
    (Doc. 26) As explained below, the undersigned Magistrate Judge recommends the Petition
21
    be denied.
22
    **I. Background**
23
         **A. Factual Summary**
24
              The following factual summary is taken from the Memorandum Decision issued by
25
    the Arizona Court of Appeals on May 8, 2007:
26
                   On February 13, 2005, Phoenix Police Officer David Murphy was
27         "driving with traffic" and pulled over a 1979 Chevrolet full-size van driven by
           [Petitioner] after randomly running the vehicle license plate and learning that
28         the "plate was suspended for mandatory insurance."  During the stop, Murphy

observed two open containers of alcohol in the vehicle.  After [Petitioner] and his passenger admitted that the alcohol belonged to them, Murphy and a second officer placed them under arrest. As Murphy retrieved the alcoholic beverages from the van for evidence purposes, he noticed a backpack "between the two seats [with] a pistol placed muzzle down or the front of the gun down, handle exposed, the grip facing outward in the backpack in plain view."[1] The gun, a .380 semiautomatic pistol, was loaded.

Murphy read [Petitioner] his *Miranda*[2] rights and transported him to the police station. Murphy testified that upon questioning, [Petitioner] stated that he carried the gun for protection and that it belonged to his wife. Further, according to Murphy, [Petitioner] stated he had prior convictions and had been to prison and had not yet had his civil right to carry a gun restored.

(Doc. 26, Exhibit ("Exh.") F)

**B. Trial and Sentencing**

Based on these facts, the State charged Petitioner with Misconduct Involving Weapons, a Class Four felony, alleging he knowingly possessed a handgun while he was a prohibited possessor under Arizona law. (*Id.*, Exh. F at 1-3) On September 7, 2005, a jury found Petitioner guilty of the charge.[3] (*Id.*, Exh. A)  On December 15, 2005, the trial court, after finding Petitioner had two prior felony convictions, sentenced Petitioner to the presumptive term of ten years in prison. (*Id.*, Exh. B)

**C. Direct Review**

Petitioner filed a Notice of Appeal on December 30, 2005. (Doc. 26, Exh. C) On September 18, 2006, Petitioner's appointed appellate counsel filed an Opening Brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (Ariz. 1969), stating there were no arguable issues of law to present, and asking the Arizona Court of Appeals to review the record for fundamental error and allow Petitioner to file a *pro se* supplemental brief. (*Id.*, Exh. D at 6-8) Additionally, counsel included in the brief a list of seventeen issues Petitioner asked him to raise. (*Id.*)  Despite being granted time to submit

---

[1] No identification was found in the backpack. (footnote in original)

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966). (footnoted in original)

[3] The Honorable Colleen L. French, Superior Court Commissioner acting as a judge *pro tem*, presided over Petitioner's trial and sentencing.

a supplemental brief, Petitioner did not file one. (*Id.*, Exhs. E, F at 2) The Arizona Court of Appeals issued a Memorandum Decision on May 8, 2007, affirming Petitioner's conviction and sentence after reviewing the entire record for reversible error and finding none. (*Id.*, Exh. F at 22)  Petitioner subsequently filed a Petition for Review to the Arizona Supreme Court on July 23, 2007. (*Id.*, Exh. H)  The Arizona Supreme Court denied review without comment on October 11, 2007. (*Id.*, Exh. I)

### D. State Post-Conviction Proceedings

On December 18, 2007, Petitioner initiated State post-conviction proceedings by filing a Notice of Post-Conviction Relief. (Doc. 26, Exh. K)  On September 26, 2008, Petitioner's court-appointed counsel filed a Notice of Completion, stating he was unable to find any viable issues to raise in a post-conviction petition. (*Id.*, Exh. N)  Petitioner was then granted time to file a *pro se* Petition for Post-Conviction Relief, which he did on December 23, 2008. (*Id.*, Exhs. O, P)  After the trial court directed Petitioner to file a certification that the petition contained every ground for relief known to Petitioner, which he submitted on February 10, 2009, Petitioner filed a second Petition for Post-Conviction Relief on March 12, 2009. (*Id.*, Exhs. Q, R and S) The State filed a Response on April 23, 2009. (*Id.*, Exh. T)  Petitioner then filed a "Motion To Be Granted for Release" on June 17, 2009. (*Id.*, Exh. U) There is no record Petitioner filed a reply in support of his post-conviction petitions. (*Id.*, Exh. LL at 7-8) On December 7, 2009, the trial court summarily denied relief, finding Petitioner failed to state any colorable claims for relief. (*Id.*, Exh. W)  Petitioner filed a Petition for Review in the Arizona Court of Appeals, which was summarily denied on May 25, 2011. (*Id.*, Exh. AA) Petitioner did not seek review in the Arizona Supreme Court. (Doc. 1 at 5)

### E. Federal Habeas Petition

On May 24, 2012, Petitioner filed this habeas petition in the District Court of Arizona, alleging four grounds for relief.[4] (Doc. 1)  In Ground One, Petitioner alleges he was denied

---

[4] The May 24, 2012 filing date is also the date Petitioner signed the Petition, doc. 1 at 11, and thus reflects the application of the prison mailbox rule, *i.e.*, a petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Jenkins v. Johnson*, 330

the right to effective assistance of counsel in violation of the Sixth Amendment when his trial counsel failed to investigate and present at trial two witnesses who observed Petitioner's encounter with police and would have testified that the officer fabricated his testimony about the incident. (Doc. 1 at 6) In Ground Two, Petitioner alleges a violation of the Fourth Amendment based on an unlawful search and seizure. (*Id.* at 7) Petitioner's description of his claim in Ground Two, however, demonstrates Petitioner is actually asserting an ineffective-assistance-of-counsel claim for counsel's failure to file a motion to suppress based on the alleged unlawful search and seizure of the vehicle. Petitioner contends that if his counsel had investigated the two witnesses referenced in Ground One, she would have had the facts to support a motion to suppress. In Ground Three, Petitioner alleges a violation of the Fifth Amendment based on a violation of *Miranda* rights. (*Id.* at 8) Petitioner explains his trial counsel filed a motion alleging a *Miranda* violation, but it was denied by the trial court as untimely, thus causing him prejudice. Like Ground Two, Petitioner is actually alleging ineffective assistance of trial counsel for failure to file a timely motion asserting a *Miranda* violation. In Ground Four, Petitioner alleges that his right to due process under the Fourteenth Amendment was violated when the trial court failed to acknowledge receipt of a compact disc ("CD") he submitted with his petition for post-conviction relief that purportedly contained witness statements from the two witnesses Petitioner referenced in Ground One above. (*Id.* at 9) Petitioner contends the trial judge, prosecutors and court clerk colluded with each other to destroy the exculpatory evidence he submitted. For relief, Petitioner requests that he be re-sentenced to time served. (*Id.* at 11)

Respondents filed their Answer and supporting exhibits on January 18, 2013. (Docs. 26-28) As noted above, Petitioner has not filed a reply.

**II. Discussion**

Respondents argue in the Answer that Ground Four of the Petition is not cognizable on federal habeas review. Regarding Grounds One, Two and Three, Respondents argue the

---

F.3d 1146, 1149 n. 2 (9th Cir. 2003).

claims fail on their merits.[5] Respondents contend the State courts' resolution of each of the claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent or based on an unreasonable determination of the facts. As a result, Respondents contend the Petition should be denied and dismissed with prejudice.

### A. Non-Cognizable Claim in Ground Four

Petitioner alleges a violation of the Fourteenth Amendment Due Process Clause in Ground Four of the Petition. Petitioner claims he submitted with "his Rule 32 on 6-17-09," a compact disc ("CD") containing exculpatory witness statements by Sam Rodriguez and Simon Reyes Ruiz. (Doc. 1 at 9)  Petitioner contends the trial judge claims she never received the CD. He further contends the trial judge, the two prosecutors and the court clerk were "all in collusion of disregarding and or sabotaging" the evidence Petitioner submitted in the post-conviction proceedings. (*Id.*)

Contrary to his assertion in Ground Four, Petitioner submitted his post-conviction relief petitions on December 23, 2008 and March 12, 2009, not on June 17, 2009. (Doc. 26, Exhs. P, S)  The State-court record reflects that the only filing submitted on June 17, 2009, was Petitioner's "Motion to be Granted for Release" which came approximately two months after the State's Response to his petitions for post-conviction relief. (*Id.*, Exhs. U, LL) Petitioner made no mention of a CD in that June 17, 2009 motion, nor is there anything in the motion's mailing certificate to indicate a CD was submitted with it. (*Id.*, Exh. U)

In the post-conviction petition submitted on December 23, 2008, however, Petitioner wrote, "with C.D. of witnesses attached," suggesting he included, or at least intended to include, a copy of the CD with the petition. (Doc. 26, Exh. P)  According to Petitioner, the two witnesses were employees of a cell phone store who witnessed Plaintiff's arrest in the store's parking lot. (*Id.*, Exh. P at 11, 13)  Also, Petitioner attached to his post-conviction petition a copy of an invoice from a private investigator, dated June 3, 2005, indicating the investigator had interviewed the two witnesses and recorded the interviews on a CD. (*Id.*,

---

[5] Respondents concede Petitioner has exhausted his State-court remedies for Grounds One, Two and Three. (Doc. 26 at 11-13)

Exh. P at exhibit 22)  Petitioner's handwritten note on the invoice indicates the investigator was hired by Petitioner's privately retained counsel who subsequently withdrew from representation. (*Id.*)

Additionally, in the Certification that the trial court directed Petitioner to file, Petitioner attached his own hand-written transcript of the investigator's interviews with the two witnesses. (Doc. 26, Exh. Q, R)  As Petitioner noted in his Certification, he had a copy of the CD in his possession at the time, thus enabling him to prepare the transcript. (*Id.*, Exh. R) The record, therefore, demonstrates that the content of the witness interviews on the CD was submitted to the trial court in the form of the hand-written transcripts. Assuming Petitioner accurately transcribed the information on the CD, the trial court had before it the same information it would have had if the CD itself had been properly submitted. For these reasons, even if the merits of Petitioner's claim in Ground Four were considered, the undersigned Magistrate Judge would find insufficient factual support for a due process violation.

Regardless, the undersigned Magistrate Judge cannot consider the merits of the Ground Four claim because Ground Four fails to assert a claim that is cognizable on federal habeas review. A habeas petitioner must allege "that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). "[F]ederal habeas corpus does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Gilmore v. Taylor*, 508 U.S. 333, 349 (1993) (stating that "mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas."). More specifically, "[f]ederal habeas relief is not available to redress errors in state post-conviction proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989). "[A] petition alleging errors is the state post-conviction review process is not addressable through habeas corpus proceedings." *Id.; see also Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) ("[T]his court has specifically stated that federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings."). Further, a habeas petitioner cannot "transform

a state law issue into a federal one by merely assertion a violation of due process." *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (quoting *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)).

Here, Petitioner is challenging the State trial court's failure, during post-conviction proceedings, to acknowledge receipt of, and consider, a CD containing allegedly exculpatory witness statements that Petitioner claims he submitted to the trial court. Because his claim alleges an error in the State post-conviction proceedings, it is not cognizable on federal habeas review. Petitioner's attempt to transform the issue into a federal one by calling it a due process violation is unavailing. The undersigned Magistrate Judge will, therefore, recommend Ground Four be denied.

## B. Standard of Review for Grounds One, Two and Three

This District Court's review of Petitioner's claims in Grounds One, Two and Three is constrained by the standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA").[6]  The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, 562 U.S. ___ , 131 S.Ct. 770, 786 (2011). The statute "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings," and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

---

[6] The AEDPA, which was signed into law on April 24, 1996, governs federal habeas petitions filed after the date of its enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997).

"[W]ith respect to any claim that was adjudicated on the merits in State court proceedings," a federal court "shall not" grant habeas relief unless the state court's decision "was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court," or the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1), (2); *Green v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011). As discussed above, this is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation omitted). The petitioner bears the burden of proving the standards for habeas relief have been met. *Id*. at 25. When applying the standards set forth in § 2254(d), a federal court should review the "last reasoned decision" by the state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

To determine whether a state-court ruling was "contrary to" or involved an "unreasonable application" of federal law, federal courts look exclusively to the holdings of the Supreme Court which existed at the time of the state-court's decision. *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. 766, __, 130 S.Ct. 1855, 1866 (2010)). The Ninth Circuit has acknowledged that it cannot reverse a state-court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explains its ruling nor cites United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)). Compliance with the habeas statute "does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief." *Richter*, 131 S.Ct. at 784.

Under § 2254(d), a state-court's decision is "contrary to" clearly established federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 15-16 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state-court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams,* 529 U.S. at 407-408. This standard requires more than merely an incorrect application of federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.* This Magistrate Judge will consider Petitioner's remaining claims in view of the foregoing standards.

**C. Analysis of Grounds One, Two and Three**

**1. Ground One**

Petitioner alleges in Ground One he was denied the right to effective assistance of counsel in violation of the Sixth Amendment when his attorney failed to investigate the two witnesses, Sam Rodriguez and Simon Reyes Ruiz, who Petitioner claims would have provided exculpatory testimony regarding the traffic stop by Officer Murphy. Petitioner contends that if counsel had investigated these witnesses, he would not have had to take the stand at trial, thus preventing his testimony from being impeached.

As referenced above, Petitioner explains that his previous counsel hired an investigator to secure statements from the witnesses. Petitioner claims his court-appointed

trial counsel sabotaged his defense by failing to obtain the file from his previous counsel, including the witnesses' statements. Petitioner contends that the CD with the witnesses' statements was recorded on June 2, 2005, three months before his trial. He contends the witnesses stated there was no traffic stop because Petitioner was already parked in the cell phone store's parking lot, and thus, Officer Murphy's description of the incident was untrue. Petitioner claims the witnesses' statements show Officer Murphy filed a false police report and committed perjury when he testified at trial. Petitioner claims he asked his trial counsel to file a motion to contest the traffic stop based on the witnesses' statements, but she refused. (Doc. 1, ¶ a at 7)

### a. Legal Standards for Ineffective Assistance of Counsel

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a convicted defendant must show that counsel's performance was objectively deficient and counsel's deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id.* at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

In addition to showing counsel's deficient performance, a petitioner must establish that he suffered prejudice as a result of that deficient performance. *Id.* at 691-92. To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999); *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). It is not enough to merely show "that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

A habeas court may proceed directly to the prejudice prong without deciding whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697; *Jackson v. Calderon*, 211 F.3d 1148, 1155 n.3 (9th Cir. 2000) (citing *Strickland*). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.

In the context of a habeas petition, a petitioner must do more than demonstrate to the federal court that the state court applied *Strickland* incorrectly. *Bell*, 535 U.S. at 698-99. Rather, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* Because the standards created by *Strickland* and § 2254(d) are both "highly deferential," review under both standards in tandem is even more deferential. *Richter*, 131 S. Ct. at 788 (citations omitted). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### b. Application

Petitioner raised this ineffective assistance claim in his Petitions for Post-Conviction Relief. (Doc. 26, Exh. P at 11-20, Exh. S Attachment at 1-7) The trial court summarily denied relief, finding Petitioner "has not stated any colorable claim for relief." (*Id.*, Exh. W) Similarly, after Petitioner raised the claim in his Petition for Review, the Arizona Court of Appeals denied review without comment. (*Id.*, Exh. AA)

As noted above, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief." *Richter*, 131 S. Ct. at 784. For the reasons that follow, this

1    Magistrate Judge finds Petitioner has failed to meet the high standard for habeas relief.

2         Rather than deciding whether trial counsel's failure to call the two witnesses

3    employed by the cell phone store constituted deficient performance, the Court instead first

4    turns to the issue of prejudice. *See Jackson,* 211 F.3d at 1155 n.3 (citing *Strickland*, 466 U.S.

5    at 697) (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of

6    lack of sufficient prejudice, which we expect will often be so, that course should be

7    followed."). In the State post-conviction proceedings, Petitioner failed to submit affidavits

8    from the two witnesses setting forth what their testimony at trial would have been. As noted

9    above, however, Petitioner did submit in the post-conviction proceedings a hand-written

10   transcript of their interviews with the private investigator. (Doc. 26, Exh. R)  According to

11   Petitioner's transcript, both witnesses told the investigator that Petitioner was in the cell

12   phone store before the police arrived and it was only after he left the store and returned to his

13   vehicle in the parking lot that the encounter with the police occurred. (*Id.*)

14        Petitioner claims this information would have shown Officer Murphy filed a false

15   police report and committed perjury when he testified on the witness stand that he was

16   following Petitioner in traffic on West Van Buren when he randomly ran Petitioner's license

17   plate for motor vehicle compliance. (Doc. 27, Attachment 7 at 123-125)  The officer further

18   testified that, when he ran the license plate, he learned it was suspended, prompting him to

19   initiate a traffic stop. (*Id*.)  The officer said Petitioner turned southbound on 33rd Avenue and

20   then came to a stop in a parking lot in front of a cell phone store. (*Id.*)

21        The undersigned Magistrate Judge finds Petitioner has not demonstrated a reasonable

22   probability that, but for counsel's failure to call the cell phone store employees as witnesses,

23   the result of the proceeding would have been different. In light of the number of traffic stops

24   likely performed by the officer, he may have remembered incorrectly and mistakenly said

25   he was following Petitioner in traffic before they both ended up in the cell phone store's

26   parking lot. Regardless, Petitioner fails to show how highlighting this discrepancy through

27   the employees' testimony would have made a difference. Whether the officer ran Petitioner's

28   license plate while following him in traffic or after seeing Petitioner's vehicle in the cell

phone store's parking lot does not change the fact that the officer learned the plate was suspended, thereby providing him with a basis to initiate contact with Petitioner. Nothing in the employees' statements had any bearing on what the officer testified he saw after initiating contact with Petitioner, which is what formed the basis for the weapon's charge against Petitioner.

Moreover, as noted above, the standard in a habeas case requires a district court to go beyond a *de novo* application of *Strickland* and find that the state courts' denial of a petitioner's claim was objectively unreasonable. *See Bell v. Cone*, 535 U.S. at 698-99. As this discussion demonstrates, there is a reasonable basis to conclude the prejudice prong of *Strickland* was not satisfied. For these reasons, the undersigned Magistrate Judge finds Petitioner has not shown that either the trial court's, or the Court of Appeals', rejection of Petitioner's ineffective-assistance-of-counsel claim for failure to call the two employees of the cell phone store as witnesses was contrary to, or an unreasonable application of, *Strickland*, or that it was based on an unreasonable determination of the facts in light of the State-court record. *See* 28 U.S.C. § 2254(d). This Magistrate Judge will, therefore, recommend that the claim in Ground One be denied.

### 2. Ground Two

In Ground Two, Petitioner claims a violation of his Fourth Amendment right to be free from an unlawful search and seizure. As noted above, however, Petitioner's description of his claim in Ground Two demonstrates he is actually asserting an ineffective-assistance-of-counsel claim for counsel's failure to file a motion to suppress based on the alleged unlawful search and seizure. Petitioner's claim is again based on the statements of the two cell phone store employees. Petitioner contends the employees' statements to the investigator show there was no traffic stop because Petitioner was already in the cell phone store parking lot. Petitioner claims that, in the absence of a traffic stop, Officer Murphy's subsequent observation of the weapon in his vehicle was unlawful. Petitioner claims that if his counsel had investigated the two witnesses, she would have realized that a Fourth Amendment violation occurred and filed a corresponding motion to suppress.

1    Petitioner raised this ineffective assistance claim in his Petitions for Post-Conviction

2    Relief. (Doc. 26, Exh. P at 15, Exh. S Attachment at 6-13)  The trial court summarily denied

3    relief, finding Petitioner "has not stated any colorable claim for relief." (*Id.*, Exh. W)

4    Likewise, after Petitioner raised the claim in his Petition for Review, the Arizona Court of

5    Appeals denied review without comment. (*Id.*, Exh. AA)

6    This Magistrate Judge finds Petitioner has not demonstrated a reasonable probability

7    that, but for counsel's failure to file a motion to suppress for an unlawful search based on the

8    cell phone store employees' statements, the result of the proceeding would have been

9    different. For the same reasons discussed above in analyzing Ground One, Petitioner has not

10   demonstrated that a motion to suppress based on the employees' statements to the

11   investigator would have been successful. Their statements simply support Petitioner's

12   contention that he was already in the cell phone store's parking lot when Officer Murphy

13   initiated his contact with Petitioner. Their testimony does not establish, as Petitioner claims,

14   that the officer's contact with Petitioner was unlawful. As stated above, whether the officer

15   ran Petitioner's license plate while following him in traffic or after seeing Petitioner's vehicle

16   in the cell phone store's parking lot does not change the fact that the officer learned the plate

17   was suspended, thereby providing him with a lawful basis to initiate contact with Petitioner.

18   For these reasons, the undersigned Magistrate Judge finds Petitioner has not shown

19   that either the trial court's, or the Court of Appeals', rejection of his ineffective-assistance-

20   of- counsel claim for failure to file a motion to suppress for an unlawful search was contrary

21   to, or an unreasonable application of, *Strickland*, or that it was based on an unreasonable

22   determination of the facts in light of the state court record.  *See* 28 U.S.C. § 2254(d). This

23   Magistrate Judge will, therefore, recommend that the claim in Ground Two be denied.

24   **3. Ground Three**

25   Lastly, in Ground Three, Petitioner alleges a violation of the Fifth Amendment based

26   on a *Miranda* rights violation. Petitioner explains his trial counsel filed a motion alleging a

27   *Miranda* violation, but it was denied by the trial court as untimely, thus causing him

28   prejudice. Petitioner's description of the claim indicates he is actually alleging a claim of

ineffective assistance of trial counsel for failure to file a timely motion asserting a *Miranda* violation.

In support of his claim, Petitioner contends that Officer Murphy initiated contact with him for an insurance violation.[7] Petitioner claims the officer should have written him a traffic citation for the absence of proof of insurance, but he did not. Instead, Petitioner claims, the officer arrested and handcuffed him, and asked him incriminating questions. Petitioner contends the answers to the officer's questions were then used to convict him on a charge that was unrelated to the reason for the traffic stop.

This Magistrate Judge finds Petitioner has not demonstrated a reasonable probability that, but for counsel's failure to file a timely *Miranda* violation motion, the result of the proceeding would have been different. Petitioner fails to adequately establish prejudice, meaning he has not shown that such a motion would have likely been granted or that even if it had been granted, the outcome of the trial would have been different.

Petitioner fails to include with the Petition a copy of the *Miranda* motion his trial counsel filed on his behalf. He did, however, attach it to his first petition for post-conviction relief in the State court, and this Magistrate Judge has reviewed it. (Doc. 26, Exh. P at Exhibits 10-12) Nothing in the motion itself, nor in anything submitted by Petitioner in support of his claim in Ground Three, persuades this Magistrate Judge that the motion was likely to be granted by the trial court if it had been timely filed.

Moreover, because the standard in a habeas case requires a court to go beyond a *de novo* application of *Strickland* and find that the State courts' denial of Petitioner's claim was objectively unreasonable, Petitioner has an especially high hurdle to get over. *See Bell v. Cone*, 535 U.S. at 698-99. As the discussion herein demonstrates, there is a reasonable basis to conclude the prejudice prong of *Strickland* was not satisfied. For these reasons, the undersigned Magistrate Judge finds Petitioner has not shown that either the trial court's, or

---

[7] This is consistent with Officer Murphy's testimony at trial wherein he testified that when he ran Petitioner's license plate, he learned it "was suspended for mandatory insurance," which meant "[i]t was no longer valid." (Doc. 27, Attachment 7 at 124)

1   the Court of Appeals', rejection of his ineffective-assistance-of-counsel claim for failure to

2   timely file a motion alleging a *Miranda* violation was contrary to, or an unreasonable

3   application of, *Strickland*, or that it was based on an unreasonable determination of the facts

4   in light of the State court record. *See* 28 U.S.C. § 2254(d). This Magistrate Judge will,

5   therefore, recommend that the claim in Ground Three be denied.

6   **III. Conclusion**

7       For the foregoing reasons, this Magistrate Judge finds that Petitioner's claim in

8   Ground Four of the Petition fails to state a cognizable federal habeas claim, and his claims

9   in Grounds One, Two and Three fail to satisfy the standards for habeas relief under 28 U.S.C.

10  §§ 2254(d)(1), (2). Accordingly, the undersigned will recommend that the Petition be denied.

11      **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28

12  U.S.C. § 2254, doc. 1, be **DENIED**;

13      **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

14  to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

15  justified as Petitioner has not made a substantial showing of the denial of a constitutional

16  right.

17      This recommendation is not an order that is immediately appealable to the Ninth

18  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

19  Appellate Procedure, must not be filed until entry of the District Court's judgment. The

20  parties have 14 days from the date of service of a copy of this recommendation within which

21  to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.

22  6(a), (b), and 72. Thereafter, the parties have 14 days within which to file a response to the

23  objections. Failure to timely file objections to the Magistrate Judge's Report and

24  Recommendation may result in the acceptance of the Report and Recommendation by the

25  district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

26  (9th Cir. 2003). Failure to timely file objections to any factual determinations of the

27  / / /

28  / / /

1  undersigned Magistrate Judge will be considered a waiver of a party's right to appellate

2  review of the findings of fact in an order of judgement entered pursuant to the Magistrate

3  Judge's recommendation. *See* Fed.R.Civ.P. 72.

4       DATED this 9th day of August, 2013.

5

6

7                               Lawrence O. Anderson
                         United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28